[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12114

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2012
JOHN LEY
CLERK

D.C. Docket Nos. 8:10-cv-01036-JSM ; 8:05-bk-27381-KRM

In Re: JAMES LOGAN MCMILLIN,

Debtor,

_____

ANGELA STATHOPOULOS,

Plaintiff-Appellant,

versus

DAN ALFORD,

Defendant-Appellee.

_____

No. 11-12353

_____

D.C. Docket Nos. 8:10-cv-01036-JSM ; 8:05-bk-27381-KRM

In Re: JAMES LOGAN MCMILLIN,

Debtor,

_____

ANGELA STATHOPOULOS,

Plaintiff-Appellee,

versus

DAN ALFORD,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(July 13, 2012)

Before DUBINA, Chief Judge, EDMONDSON, Circuit Judge, and GOLDBERG,[*]
Judge.

PER CURIAM:


**I. BACKGROUND**

_____

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge,
sitting by designation.

Appellant-Trustee Angela Stathopoulos ("Appellant-Trustee") is the Trustee for the bankruptcy estate of James Logan McMillan ("Debtor"). Appellant-Trustee appeals the district court's judgment affirming the bankruptcy court's order in an adversary proceeding she filed. In the adversary proceeding, the Trustee alleged several causes of action against multiple individuals, including several fraudulent conveyance claims against Appellee Dan Alford ("Alford").

There are many individuals and entities involved in this case. Debtor is a serial bankruptcy filer. Virtual Trading Group, Inc. ("Debtor/VT") is a company that Debtor does not own, but in which Debtor had sufficient control such that the bankruptcy court found it to be Debtor's alter ego. Alford owns Bluewater Trading Company ("BWT"), a Georgia corporation that is not affiliated with Debtor/VT but that had "partnered" with Debtor/VT in many transactions in the products-trading business. Alford is also affiliated with the construction company Southeastern General ("SEG"). Alford does not own SEG; however, he makes loans to SEG and shares in the company's profits and losses.

Two particular transactions form the basis of Appellant-Trustee's claims that Alford is liable to the estate for receiving a fraudulent transfer from Debtor/VT. The first transaction involves the transfer of a sum of money from BWT to Debtor/VT, and then from Debtor/VT to SEG. The second, and related,

3

transaction involves the subsequent transfer of a piece of property (the "Ball Ground Home") from SEG to Alford.

Specifically, on December 10, 2004, less than one year before Debtor filed his bankruptcy petition, BWT wired $282,000 to Debtor/VT.[1]  Within hours after the wire transfer was posted to Debtor/VT's bank account, Alford accompanied Debtor to a bank branch and Debtor purchased for Debtor/VT a $280,000 cashier's check payable to SEG.  Debtor/VT did not receive anything in exchange for its transfer of $280,000 to SEG.  Shortly after the date of the wire transfer, Alford signed a purchase and sale agreement with SEG for the Ball Ground Home.

Debtor and Alford had a written agreement (the "2004 Agreement") related to the transfer of both the money and the property.  The agreement, signed by Alford and Debtor/VT's owner, provided that Alford agreed to lend Debtor/VT $280,000 for the right to purchase the Ball Ground Property.  Under the agreement, the title to the property would be in Alford's name until he had received repayment in full.  If the money had not been fully repaid within sixty days, then Debtor/VT forfeited any right to the property.  However, Debtor did not repay the money in the agreed-upon time.  As a result, Alford took title to the Ball

---

[1]  The parties acknowledge that $2,000 is sales commission income, which is not in dispute; thus, the disputed amount is $280,000.

4

Ground Property. At the time of trial, Alford had title to the Ball Ground Property. Although Debtor was living in the property, he never had title to it. Alford subsequently sold the Ball Ground Property. Appellant-Trustee claims that either the $280,000 or the Ball Ground Property are property of the Debtor's bankruptcy estate.

The bankruptcy court granted relief to Trustee on most counts relating to the other individuals, but dismissed the claims against Alford. The bankruptcy court specifically found that the transfer of $280,000 from Debtor/VT to SEG could not be avoided as to Alford because (1) the $280,000 was never Debtor's property, since neither Debtor nor Debtor/VT had "control" of these funds, and (2) the $280,000 went to SEG, and SEG had unfettered use of these funds.

Appellant-Trustee appealed the bankruptcy court's ruling, arguing that the bankruptcy court erred when it concluded that neither Debtor nor Debtor/VT ever had control of the funds. The district court reversed the bankruptcy court's finding as to control over the $280,000, concluding that Alford had failed to rebut the presumption that the funds in Debtor/VT's bank account belonged to the Debtor. However, the district court ultimately affirmed the judgment in Alford's favor, stating that the Trustee had not proven the Debtor's insolvency.

Appellant-Trustee brought this appeal, arguing that because the district

5

court reversed on the control issue, the case must be remanded to the bankruptcy court for it to reconsider the fraudulent conveyance counts against Alford. On cross-appeal, Alford argues that the district court erred in determining that the bankruptcy court was clearly erroneous in finding that neither Debtor nor Debtor/VT had control of the money in Debtor/VT's bank account. We hold that the bankruptcy court did not err in concluding that neither Debtor nor Debtor/VT had control of the funds. Because our holding on the issue of control renders Appellant-Trustee's appeal moot, we do not address Appellant-Trustee's claims.

## II. STANDARD OF REVIEW

This Court reviews conclusions of law *de novo* and reviews findings of facts for clear error. *In re Int'l Pharm. & Disc. II, Inc. v. Tabas*, 443 F.3d 767, 770 (11th Cir. 2005). A finding of fact is not clearly erroneous unless, considering all of the evidence, this Court has "the definite and firm conviction that a mistake has been made." *Id.*

## III. DISCUSSION

Appellant-Trustee filed an adversary proceeding alleging several causes of action for avoidance of fraudulent transfers under 11 U.S.C. § 548. The purpose of avoiding fraudulent transfers is to prevent the debtor from diminishing funds that are generally available for distribution to creditors. Consequently, there is a

6

presumption that "any funds under the control of the debtor, regardless of the source," are the debtor's property, "and any transfers that diminish that property are subject to avoidance." *In re Sanborn & Chase Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987). However, presuming ownership in situations of alleged fraudulent transfers "poses the distinct danger that creditors could receive a windfall in the form of funds that simply passed through the debtor's possession but in fact were not property of the debtor." *Id.*

In *In re Chase & Sanborn Corp.*, this Court established a "control test" for determining when funds provided to a debtor by a third party become property of the debtor so that an allegedly fraudulent transfer of the funds to a noncreditor is subject to avoidance under 11 U.S.C. § 548. 813 F.2d at 1181–82. In a fraudulent transfer situation, "more is necessary to establish the debtor's control over the funds than the simple fact that a third party placed the funds in an account of the debtor with no express restrictions on their use. *Id.* at 1181.

The control test is a "very flexible, pragmatic one; in deciding whether the debtors had controlled property subsequently sought by their trustees, 'the court must look beyond the particular transfers in question to the entire circumstance[s] of the transactions.'" *Nordberg v. Societe Generale*, 848 F.2d 1196, 1199 (11th Cir. 1988) (quoting *In re Chase & Sanborn Corp.*, 813 F.2d at 1181–82). In

7

looking at the entire circumstances of the transactions, courts have considered the source of the funds, which party primarily benefits from the challenged transactions, and whether the debtor has the power to designate which party will receive the funds and the power to actually disburse the funds.  *See In re Bankest Capital Corp.*,  374 BR 333, 338 (Bankr. S.D. Fla. 2007) (following and applying the test established in *In re Chase & Sanborn*).

After hearing all testimony and evaluating the evidence and the credibility of key witnesses, the bankruptcy court concluded that neither the Debtor nor Debtor/VT had sufficient control of the funds.  The bankruptcy court found that the $280,000 was only in Debtor/VT's bank account for a few hours, the time it took to obtain a cashier's check payable to SEG.  The bankruptcy court reasoned that neither the Debtor nor Debtor/VT had the power to designate which party would receive the funds, and neither had the power to disburse the funds because the funds were specifically designated under the terms of the 2004 Agreement.  Further, the bankruptcy court specifically found that the $280,000 was not money that BWT owed to the Debtor or to Debtor/VT.

BWT wired the money to Debtor/VT.  Thus, the source of the funds was BWT, Alford's company.  Once the funds were in Debtor/VT's account, Debtor obtained a cashier's check for $280,000 payable to SEG, the construction business

8

in which Alford had an interest.  Debtor/VT did not receive any consideration for this transfer of money.

Shortly thereafter, Alford received a quitclaim deed to the residence. Hence, the eventual use of the funds was to purchase the Ball Ground residence. Alford benefitted most from the money transfer, and the transfer was done at his direction.  The Debtor and Debtor/VT merely facilitated the transfer of the funds and the "actual connection between the funds and the debtor was quite tangential." *In re Chase & Sanborn*, 813 F.2d at 1182.

The bankruptcy court correctly applied the control test.  Applying the control test to the facts found by the bankruptcy court, the transfer is not avoidable.  Thus, the bankruptcy court correctly determined that the funds were never under the Debtor/VT's control and were not part of Debtor's estate.

## IV. CONCLUSION

The Court **REVERSES** the district court order with respect to its determination regarding the issue of control over the funds and reinstates the bankruptcy court judgment.  Thus, Appellant-Trustee's appeal is dismissed as moot.

9